IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 10, 2000

## THOMAS HORACE JOINER v. DORA BELL TAYLOR JOINER

**Direct Appeal from the Chancery Court for Stewart County**
**No. 94-7-025,    Robert E. Burch, Chancellor**

**No. M1999-01721-COA-R3-CV - Filed March 28, 2001**

Wife appeals the conversion from a divorce from bed and board (now known as a "legal separation") to an absolute divorce, claiming the trial court was required to hold another evidentiary hearing concerning the support and property rights of the parties. The parties had ostensibly agreed to a final division of property at the time of the divorce from bed and board, and the trial court had held a later hearing regarding the fairness of the division and Wife's capacity to make such an agreement. Because we find that the trial court made "a final and complete adjudication of the support and property rights of the parties," as required by statute, when it incorporated the agreement of the parties at the time of the divorce from bed and board, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S, and WILLIAM C. KOCH, JR., J., joined.

David D. Wolfe, Dickson, Tennessee, for the appellant, Dora Bell Taylor Joiner.

Jack M. Rudolph, Clarksville, Tennessee, for the appellee, Thomas Horace Joiner.

### OPINION

This is the parties' second appearance before this court, *see Joiner v. Joiner*, No. 01A01-9710-CH-00593, 1998 WL 426887 (Tenn. Ct. App. July 29, 1998) (no Tenn. R. App. P. 11 application filed).

### I. Background

Thomas Horace Joiner ("Husband") filed a complaint for absolute divorce from Dora Bell Taylor Joiner ("Wife") in 1994, after forty-four years of marriage, on grounds of irreconcilable differences and inappropriate marital conduct. Wife answered, denying inappropriate marital

conduct on her part, admitting irreconcilable differences existed between the parties and alleging that she was entitled to a divorce on several named grounds. A hearing was set for July 18, 1996, at which both parties were represented by counsel and which resulted in an agreement. The trial court's order, entered September 27, 1996, states:

> . . . it was announced to the court that the parties had reached an agreement settling all matters in dispute between them. The parties announced that they had agreed that a Bed and Board Divorce should be entered which shall be converted to an Absolute Divorce effective November 1, 1996. The Court further reviewed the economic terms of the settlement agreement filed with the court. The Court finds that the terms of the settlement between the parties is fair and equitable and the Agreement is adopted, ratified and approved by the Court. . . . A Bed and Board Divorce is hereby granted . . . Effective November 1, 1996, this Bed and Board Divorce shall be converted to an Absolute Divorce . . ."

A three page handwritten document, signed by both parties and notarized, was attached to the order. The document stated, among other things, that the parties agreed to a divorce from bed and board at that time, which would convert to an absolute divorce three and one-half months later. It also stated, "Through Oct. 31, 1996 Mr. Joiner will continue to maintain Mrs. Joiner on his medical insurance policy." This agreed-upon provision was designed to ensure that Ms. Joiner maintained health insurance until she became eligible for Medicare. The agreement reserved to each party a life estate in different real properties, with their sons to have the remainder interests in the properties. It divided the bank accounts, the personal property, and an expected settlement in a lawsuit. Husband was to retain his disability, social security, and retirement benefits and to pay Wife $300 per month beginning August 1, 1996 until her death or remarriage, or until Husband's death.

On November 8, 1996, after Wife had reached her sixty-third birthday, and after the divorce, by its terms, would have converted to an absolute divorce, Wife filed a Tenn. R. Civ. P. 60.02 motion, seeking to set aside the "final decree," claiming that when she signed the agreement she "was not at her normal state of mind, signed the agreement under duress and does not even recall signing the agreement," because she had taken medication the morning of the hearing to relieve her stress. She later amended the Rule 60.02 motion to include claims that the agreement did not include all of the parties' property and that the property division was not equitable.

The trial court held a hearing on Wife's motion. It accepted the depositions of Wife's physician and her former counsel, and heard testimony from Wife, Husband, two of the parties' sons, and a real estate appraiser. The court noted that several people had seen Wife in court on the day trial was scheduled, and that "no one noticed any indication that she was in any way affected." The court reviewed the property division and stated, "The Court does not find that there is so much disparity in the property interest as to indicate any impairment on her part." Regarding Wife's allegation that some of the property had not been included in the agreement between the parties, the court stated, "[T]he Court is of the opinion that the meat store fixtures and so forth were *de minimis* and that they were actually included in whoever received the farm, that is, life estate to Mr. Joiner

and the remainder to the boys." The court then denied Wife's motion to set aside the absolute divorce.

Wife appealed to this court, arguing that the trial court erred by denying her motion to set aside the "final decree." *Joiner*, 1998 WL 426887 at \*1. This court determined:

> The decree of divorce from bed and board entered on September 27, 1996 was a final appealable judgment as to the divorce from bed and board. However, the peculiar wording (*shall be*) prevented it from being a final, appealable judgment of absolute divorce which had not, at that time, been granted. Until the Trial Court enters an order granting an absolute divorce which is effective upon entry, the matter of the granting of an absolute divorce will not be the subject of a final, appealable judgment and the Trial Court will be free to revise its tentative prospective decision to grant an absolute divorce on a future date.

*Id.* at \*1. This court further noted that a conversion from a divorce from bed and board to an absolute divorce required a petition to be filed by one of the parties. *Id.* at \*2. Because no petition had been filed, we held that the "anticipatory grant of an absolute divorce effective November 1, 1996, was ineffective." *Id.* Because the "final decree" granting an absolute divorce was not "final," and because a Rule 60.02 motion applies only to final judgments, we found the "arguments of the parties as to the correctness of the denial of Rule 60.02 become moot." *Id.* We vacated that portion of the trial court's order prospectively granting a final divorce. However, we affirmed that portion of the order denying of relief to Ms. Joiner as to the divorce from bed and board under Rule 60.02.

After remand from this court, Husband filed a petition for absolute divorce, which stated, among other things, "[The parties] remain separated. . . . All other matters have previously been resolved." Wife filed an answer, including a counter petition for absolute divorce, but stating, "Since the parties are still legally married, and separated under a Divorce from Bed and Board, this court is required to [make] a final and complete adjudication of the support and property rights of the parties under T.C.A. 36-4-102. [Wife] does not believe that the terms of the Marital Dissolution Agreement previously executed are fair and equitable and hereby withdraws from said agreement as is her right at any point until the entry of a Final Decree of Divorce." Maintaining that the trial court was required to hold an evidentiary hearing, Wife sought "a full hearing and full and complete adjudication of [her] right to support and property rights," "alimony in an amount sufficient to maintain her standard of living" prior to the separation, and "an equitable division of all the parties' marital property." Wife's pleading did not allege any new facts.

On November 16, 1998, the trial court heard arguments and directed the parties to submit briefs in support of their respective positions. The court took the matter under advisement, and on May 27, 1999, the same chancellor who had presided over the matter throughout entered a memorandum opinion which reviewed the procedural history, considered the arguments and denied Wife's petition. Regarding the original's order's delay in the grant of the absolute divorce, the court stated:

3

The reason for this unusual provision was that [Wife's] medical insurance benefits (through [Husband's] insurance policy at his place of employment) would be terminated if the parties were awarded an absolute divorce. Therefore, a divorce [from bed and board] was awarded for three and one-half months until [Wife] attained the age of 63 (October 27, 1996) at which time she could be covered by Medicare.

* * *

From the outset, the Court notes that [Wife] waited until after the conversion date contained in the marital dissolution agreement before voicing any objection thereto. Thereafter, she has continually attempted to abrogate the agreement that she made and agreed to in open court. The Court cannot help but be suspicious and notes that, if the objection had been made and acted upon soon after the agreement was made, [Wife] could have been left without medical insurance. She waited until it was to her advantage to attempt to go back on her word. Those who seek equity must do equity.

The court determined that a "hearing is not required, but often necessary" when a party seeks to convert a divorce from bed and board to an absolute divorce. It then determined that a hearing was not necessary in this case because the agreement between the parties was intended to be final and had been approved by the court. The trial court stated:

But for the attempt to allow [Wife] to keep her health insurance until she qualified for Medicaid, the divorce would have been absolute. The Court has reviewed the marital dissolution agreement and finds it to have been the intent of the parties to make a final disposition of their marital property and spousal support.

* * *

To hold otherwise would allow [Wife] to agree to a division, take advantage of its provisions, then, when a substantial benefit had been exhausted, abrogate her agreement and renegotiate the provisions of the property and support agreement from a much improved bargaining position. This defies equity and common sense.

Wife filed a timely notice of appeal, raising only one issue: Whether the trial court erred by denying her request for an evidentiary hearing when converting the divorce from bed and board to an absolute divorce.

4

## II. Analysis

Because the question for review is one of statutory interpretation, we review the trial court's decision *de novo* on the record with no presumption of correctness attached. *Hill v. City of Germantown*, 31 S.W.3d 234, 237 (Tenn. 2000).

Wife contends that the language of Tenn. Code Ann. § 36-4-102,[1] "The court granting the absolute divorce shall make a final and complete adjudication of the support and property rights of the parties," requires the court to hold another evidentiary hearing before the divorce becomes final. We do not interpret this language as requiring another evidentiary hearing, simply an "adjudication." The trial court herein made such an adjudication after hearing arguments, considering briefs, and reviewing the prior proceedings. Wife did not allege any new facts which would require new evidence.

Although in most cases an evidentiary hearing will be required at the time an absolute divorce is awarded, that is not always true. In many cases, an order granting a divorce from bed and board is not intended to make final disposition of the parties' property. In those situations, the parties seek a legal separation without knowledge that a reconciliation will not be successful. Then, property distribution and support awards at the beginning of a legal separation are not intended to be a final adjudication of such issues if a reconciliation does not occur. The trial court opined that "a final property hearing will usually be required," since such a hearing is usually necessary for a re-examination of the temporary award of property and support made upon the grant of divorce from bed and board.

In the case before us, however, the parties initially sought an absolute divorce and agreed to such divorce, but attempted to simply delay its effective date by a few months. The support and property division were intended to be final. The parties agreed to a property division, signed and notarized it, and submitted it to the chancellor, who incorporated it into the order. Upon Wife's motion to set aside, the trial court held a complete evidentiary hearing regarding both Wife's capacity at the time of the agreement and the fairness of the agreement itself. We believe the trial court made a "final and complete adjudication of the support and property rights of the parties" when it entered the original order and affirmed that adjudication after a full hearing in its May 27, 1999 order. Therefore, the trial court was not required to hold yet another evidentiary hearing when converting the divorce from bed and board to an absolute divorce. We note that this court affirmed the trial court's denial of Rule 60.02 relief with regard to the distribution of property in the order granting divorce from bed and board.

---

[1] Tenn. Code Ann. § 36-4-102 was amended by 1998 Tenn. Public Acts, ch. 1059, § 2, which, among other things, removed the designation "divorce from bed and board" from the statutes and inserted "legal separation." That legislation passed in May 1998, and became effective on January 1, 1999, while the trial court had this matter under advisement. The language relied upon by Wife, regarding a "final and complete adjudication" was not changed.

In addition to the language of the statute, Wife relies on *Meriwether v. Meriwether,* (no Court of Appeals number assigned) (Tenn. Ct. App. Dec. 28, 1979) (no Tenn. R. App. P. application filed), an unpublished case from this court, to support her argument that the trial court should have held a hearing. In *Meriwether*, one judge granted the wife a divorce from bed and board, based on the husband's inappropriate marital conduct, awarded the wife the marital home, and ordered the husband to pay alimony. *Meriwether* at 1-2. Two years later, the husband filed a petition, noting that the divorce from bed and board had been in effect for two years without a reconciliation, requesting that the wife be granted an absolute divorce, and asking that the court make a final adjudication of the support and property rights of the parties. *Id*. at 2.

The matter was heard before a second judge, who entered an order which stated:

The Court was further of the opinion that the Court, upon the hearing of the original Complaint for Divorce, had fully considered the support and property rights of the parties, and had entered a comprehensive Decree fully fixing the rights of the plaintiff . . . regarding alimony, support, and division of property . . . and the Court being of the opinion . . . that the property rights of the parties should be finally determined in accordance with the earlier Decree . . .

*Id*. at 2-3. The wife appealed to this court, arguing, *inter alia*, that the trial court was required to hear proof regarding the support and property rights of the parties. *Id*. at 3-4. We reversed, noting that "the successor judge had no access to the information presented to the predecessor except through the recitations of the bed and board decree." *Id*. at 4. We considered the fact that the decree before the second judge contained no finding as to the total property owned by the parties. *Id*. at 5. Similarly, no evidence showed the first judge had complete information regarding the parties' property and income, or that he intended the divorce from bed and board to be a final division of property. *Id*. The second judge, without knowing the evidence presented to the first, declined to hear evidence himself. *Id*. at 3. We observed that, because a divorce from bed and board is generally considered a temporary arrangement to provide for the needs of the parties and to encourage reconciliation, upon conversion from a divorce from bed and board to an absolute divorce, a court should re-examine the support and property rights of the parties in light of the impending permanent dissolution. *Id*. at 6.

The case before us differs from *Meriwether* in two important respects. First, the chancellor who awarded Husband the absolute divorce has presided over this matter from the outset. This chancellor was quite familiar with the parties' holdings and income, having already visited the agreement twice, first at the original hearing and again on Wife's motion to set aside. Second, this divorce from bed and board was intended to become an absolute divorce in three and one-half months, so the support and division of property were intended to be permanent when the original order was entered. There was no intent that a reconciliation would even be attempted. The order of absolute divorce was to be delayed simply to prevent a lapse of insurance coverage for the wife. We also note that this court in *Meriwether* acknowledged that making the property and support award upon a conversion from bed and board to an absolute divorce without further hearing is "permissible under the statute." *Id.*

6

We affirm the trial court's entry of an absolute divorce without a further evidentiary hearing regarding the support and property rights of the parties. This cause is remanded for such further proceedings as may be required. Costs are taxed to the appellant, Dora Bell Taylor Joiner, for which execution may issue if necessary.

                                                _____

                                                PATRICIA J. COTTRELL, JUDGE